IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

L.A., TONY SISNEROS,

       Plaintiff,

vs.                                         CIV-02-1035 JB/KBM

CITY OF ALBUQUERQUE, a Municipal
Corporation, and Robert Duren, Travis McGuire,
Wayne Cunningham, and John Does I-III,
Individually and in their official capacities as
Employees of the City of Albuquerque,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint.  The primary issues are whether the Defendants are entitled to qualified immunity from Plaintiff L.A., Tony Sisneros' ("Sisneros") § 1983 claims and to dismissal of Sisneros's claims under the New Mexico Tort Claims Act.  Because the Court concludes that there is no genuine issue of material fact, and that the Defendants are otherwise entitled to judgment as a matter of law, the Court will grant the motion for summary judgment and dismiss Sisneros' Complaint.

## PROCEDURAL POSTURE

In responding to the Defendants' motion, Sisneros does not specifically dispute any of the facts that the Defendants set forth in their motion for summary judgment.  More importantly, Sisneros does not present any evidence that rebuts any of the Defendants' facts.  The local federal rules

1

provide:

> A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.

D.N.M. LR-Civ. 56(b).

Sisneros' failure to dispute any of the Defendants' facts means that the Court must deem those facts admitted for purposes of deciding this summary judgment motion. With this in mind, this Court would be on solid ground in finding that the individual Defendants: (i) had reasonable suspicion to stop and detain Sisneros; (ii) had probable cause to arrest Sisneros; and (iii) did not use excessive force against Sisneros or commit battery or assault against him.

Rather than disputing the individual Defendants' story, Sisneros tells another story that does not identify who did what. Nevertheless, in responding to the Defendants' motion, Sisneros does not set forth any arguments or present evidence demonstrating that reasonable suspicion and/or probable cause is lacking in this case. The Court will thus deem those findings admitted as true.

It is also important to note that discovery concluded in this case on June 12, 2003. See Initial Pre-Trial Report at 3 (Doc. 13). During the discovery period, Sisneros did not take any depositions. None of the officers named as defendants was deposed. The only deposition taken was that of Sisneros by the Defendants. See Transcript of Hearing, Excerpts at 2, lines 10-14. Several days[1] before the end of the discovery period, counsel for Sisneros contacted the city attorney's office to

---

[1] Counsel for Sisneros contends he called ten days before the end of discovery, but the Defendants apparently contested that recollection. See Transcript of Hearing, Excerpts at 3, lines 20-22 ("I believe on the tenth day it was – and this was contested at the hearing in front of Judge Molzen – I called[.]").

set depositions of the officers.  See id. at 3, line 20 to 4, line 8.  By the time the attorneys made

contact with each other, there was insufficient time to give the requisite ten days notice for the

depositions inside the discovery period.  Sisneros then made an oral request for an extension of the

discovery  period so that he might depose the officers and a telephonic hearing was held.  Judge

Molzen denied Sisneros' request.  See Order Denying Extension of Discovery at 2 (Doc. 19)(filed

June 12, 2003)("There has been no showing of due diligence to complete discovery within the

required  period  or  a  showing  of  special  circumstances  why  discovery  could  not  have  been

accomplished  during  this  five  months.").   Sisneros  did  not  appeal  the  Magistrate's  ruling.   See

Transcript of Hearing, Excerpts at 4, lines 23-24.[2]

        There is, therefore, no further evidence yet to be discovered by Sisneros to support his claims.

Sisneros has provided the Court with the existing evidence that might support his claims and preclude

summary judgment.  No further evidence in support of his claims will likely be available at trial.

## BACKGROUND

        This case arises in the context of an arrest of a citizen and implicates the Fourth Amendment

protection of individuals "to be secure in their persons . . . against unreasonable . . . seizures."

Graham v. Connor, 490 U.S. 386, 394 (1988).  Police officers are aware that they are not to use

unnecessary or excessive force against citizens.  The affidavit of Defendant officer Robert Duren

---

        [2] At the hearing on  this motion, Sisneros for the first time requested that this Court allow him
to depose the police officers.  See Transcript of Hearing, Excerpts at 5, l. 9-14.  Sisneros did not
appeal the Order of Magistrate Judge Molzen at the time it was entered.  See Fed. R. Civ. P.
72(a)("Within 10 days after being served with a copy of the magistrate judge's order, a party may
serve and file objections to the order; a party may not thereafter assign as error a defect in the
magistrate judge's order to which objection was not timely made.").  Accordingly, this Court will not
at this advanced stage of the proceeding disturb the Magistrate's ruling denying an extension of the
discovery period so that Sisneros may conduct discovery that could have been conducted during the
actual discovery period.

states he has received training in "search and seizure."  Affidavit of Robert Duren ¶¶ 2-3, at 1 (executed June 12, 2003).  Police officer training -- given initially at the police academy, as well as periodically – includes training on the use of force.  Id.

On August 20, 2000, an individual named Jonathan Wood called 911 to report that an Hispanic male, who was driving a silver Intrepid with license plate number 040ABM, was weaving on the roadway and was brandishing a firearm outside his driver's side window.  See 911 audio tape.[3] The dispatch operator communicated the information relayed to her by Mr. Wood to officers of the Albuquerque Police Department.  See Duren Aff. ¶ 4, at 2; Affidavit of Wayne Cunningham ¶ 4, at 1 (executed June 16, 2003); Affidavit of Travis McGuire ¶ 4, at 1 (executed June 16, 2003). Defendant officers Robert Duren, Travis McGuire, and Wayne Cunningham heard the dispatch and attempted to locate the vehicle.  See Duren Aff. ¶ 7, at 2; Cunningham Aff. ¶ 5, at 1; McGuire Aff. ¶ 7, at 2.

---

[3] Sisneros objects to the Defendants' use of the 911 tape at this stage, because the police officers did not hear the 911 tape at the time of the arrest.  Defendants have attached the actual 911 audio tape as Exhibit A to Defendants' Memorandum in Support of Their Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint.  On a motion for summary judgment, it is appropriate for the Court to consider all evidence "that is authenticated and constitutes admissible evidence."  11 J. Moore, Moore's Federal Practice § 56.14[c] (3d ed. 2003).  The Defendants have not provided any supporting affidavits to authenticate the tape.  "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  Mondragon v. Trujillo, Civ. No. 02-617, Memorandum Opinion and Order at 6-7 (D.N.M. filed Aug., 4, 2003)(Johnson, J.).  Sisneros has not, however, timely objected to any deficiencies in the authenticity of the 911 tape and has, therefore, waived any such objection.  See Ortiz v. Wingard, 173 F. Supp. 2d 1155, 1163 (D.N.M. 2001)(Smith, M.J.).  Further, Sisneros provided the 911 tape to the Defendants as part of his initial disclosures and cannot, therefore, object to the tape on authenticity grounds.  See Anderson v. Cramlet, 789 F.2d 840, 845 (10th Cir. 1986)("Defendants obtained Mr. Anderson's letter . . . in a request for production of documents.  It is therefore admissible under Rule 56(c).").  The Court may, therefore, consider the 911 tape in ruling on this Motion for Summary Judgment.

Duren was the first officer to locate the vehicle and to signal for it to pull over.  <u>See</u> Duren Aff. ¶¶ 7-8, at 2.  The driver of the Intrepid, who was later identified as Sisneros, pulled over.  <u>See</u> Duren Aff. ¶ 8, at 2.  Sisneros is elderly.  He went through the New Mexico state police officers' academy in 1951.  <u>See</u> Deposition of Tony Sisneros at 7, line 9 (taken April 3, 2003).

Cunningham and McGuire arrived on the scene, and all three officers then initiated a felony stop because it was reported to them that the suspect was armed with a handgun.  <u>See</u> Duren Aff. ¶ 8, at 2; Cunningham Aff. ¶ 7, at 2; McGuire Aff. ¶ 8, at 2.  McGuire gave Sisneros commands to exit the vehicle, and he eventually complied with those commands and exited the car.  <u>See</u> Duren Aff. ¶¶ 10-13, at 2-3; Cunningham Aff. ¶¶ 8-9, at 2; McGuire Aff. ¶¶ 9-12, at 2.  There is no allegation in the individual Defendants' affidavits that Sisneros showed any resistance to the traffic stop.  The officers indicate that he exited his vehicle without physical resistance or evidence of weapons.

Duren contends that he immediately handcuffed Sisneros once Sisneros exited the vehicle.  <u>See</u> Duren Aff. ¶ 13, at 3.  Sisneros contends that, after the police stopped his vehicle,  he was taken into custody at the side of his automobile after he was required to walk backwards toward the police with his arms upraised.  <u>See</u> Sisneros Depo. at 48.  Sisneros cannot identify the police officers who gave him these instructions.  <u>See</u> Sisneros Depo. at 48, lines 1-4.

McGuire testified that he did not touch or physically restrain Sisneros.  <u>See</u> <u>id.</u> ¶ 16, at 2.  Cunningham's Affidavit is silent on this question.  Sisneros, however, contends that more than one police officer grabbed him and handcuffed him.  <u>See</u> Sisneros Dep. at 48-50.

Sisneros alleges that one unidentified officer grabbed him on one side and another unidentified officer grabbed him on the other side and threw him to the ground and handcuffed him.  <u>See</u> Sisneros Depo. at 48-51.  Sisneros alleges that this handcuffing process was "real fast."  <u>Id.</u> at 50, lines 21-22.

He contends that the arresting officers used excessive force to handcuff him by having two officers grab him, throw him to the ground, use a knee or an arm in the process, and then pull him upright from under his arms to a standing position. See id. at 48-51. Sisneros contends that, after he was handcuffed, he was lifted off the ground. See id. at 50, lines 23-25, to p. 51, lines 6-10.

Sisneros did not complain to the officers of any injury at the time of his arrest. See Duren Aff. ¶ 17, at 3; McGuire Aff. ¶ 17, at 2. The officers did not notice any apparent injuries on Sisneros. See Duren Aff. ¶ 17, at 2. Sisneros, however, contends that he advised the police officers that he had back and shoulder problems before they handcuffed him. See Sisneros Depo. at 48-49. Sisneros contends that an officer moved his handcuffs from the back to the front after he complained of discomfort. See id. at 59, lines 23-25, to 60, lines 1-8. Sisneros does not know what, if anything, any of the Defendants may have done to him. See id. at 97, lines 16-21.

Wood came to the scene and identified Sisneros as the person who threatened him with a handgun. See Duren Aff. ¶ 15, at 3. Duren then transported Sisneros from the scene to the Bernalillo County Sheriff's substation. See id. ¶ 16, at 3. McGuire recovered the handgun from Sisneros's vehicle. See McGuire Aff. ¶ 14, at 2.

McGuire and Cunningham had no further contact with Sisneros after he left the scene with Duren. See Cunningham Aff. ¶ 12, at 2; McGuire Aff. ¶ 18, at 2. Duren had no further contact with Sisneros after he transported Sisneros to the Bernalillo County Sheriff's Department substation. See Duren Aff. ¶ 16, at 3. The prosecuting attorneys' office dismissed the criminal charges against Sisneros after the passage of a period of advisement. See Memorandum of Case Under Advisement; Satisfactory Completion of Period of Advisement.

In Count I of his Complaint, Sisneros has alleged a violation of his Fourth Amendment rights,

contending that the Defendants violated his Fourth Amendment rights by using excessive and unnecessary force.  In Count II of his complaint, Sisneros has alleged assault and battery, for which he alleges that the Defendants are liable under the New Mexico Tort Claims Act.

## LAW ON SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

A motion for summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Jones v. Denver Post Corp., 203 F.3d 748, 751 (10th Cir. 2000).  Normally, the summary judgment standard requires a court to examine the record, review the evidence in the light most favorable to the non-moving party, and make all inferences in the light most favorable to the non-moving party.  See Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000); Bisbee v. Bey, 39 F.3d 1096, 1100 (10th Cir. 1994).

In the specific context of qualified immunity, the United States Court of Appeals for the Tenth Circuit has stated:

> We review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings.  In our prior decisions, we have emphasized that once a defendant raises a qualified immunity defense, the plaintiff bears a heavy burden. The qualified immunity defense cannot be analogized to other affirmative defenses because of the interests implicated in suits against government officials. Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial.

Id. (internal quotation marks and citation omitted).

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense as a basis for summary judgment, the burden shifts to the plaintiff "to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988). See Saucier v. Katz, 533 U.S. 194, 201 (2001); Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995)("Once a defendant pleads qualified immunity, the plaintiff initially bears a heavy two-part burden."). In meeting this burden, a plaintiff must do more than identify in the abstract a clearly established right and allege that a defendant has violated that right. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d at 645.

"A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 (1991). See Bella v. Chamberlain, 24 F.3d 1251, 1254 (10th Cir. 1994)(same, quoting Siegert v. Gilley). For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Moreover, the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" Saucier v. Katz, 533 U.S. at 201. "If the plaintiff fails to carry either part of [the] two part burden, the defendant is entitled to qualified immunity." Albright v. Rodriguez, 51 F.3d at 1535. If a plaintiff meets this two-part burden, then the burden shifts to the defendant to show that there are no genuine issues of material fact which will defeat the claim for qualified immunity. See Woodward v. City of

Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).

For a plaintiff's claim to survive summary judgment, the record must contain facts that rebut the presumption of an entitlement to qualified immunity.  See Medina v. Cram, 252 F.3d 1124, 1130 (10th Cir. 2001).  The Court is not to focus on just one piece of evidence.  Summary judgment is proper where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  See also Black v. Baker Oil Tools, Inc., 107 F.3d 1457, 1460 (10th Cir. 1997)("Genuine factual issues must be supported by more than a mere scintilla of evidence.")(internal quotation marks and citation omitted).

## ANALYSIS

Sisneros does not meet his burden of showing that the individual Defendants violated his constitutional rights.  Accordingly , the Court will dismiss his federal claims against the individual Defendants with prejudice.  Because the Court dismisses the federal claims against the individual Defendants, it will also dismiss all federal claims against the City of Albuquerque whose liability is predicated on finding that the individual Defendants are liable for a constitutional or statutory violation.

I.     **THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AND THUS TO A DISMISSAL OF COUNT I OF THE COMPLAINT (EXCESSIVE FORCE AND UNREASONABLE SEIZURE).**

Based upon the arguments and exhibits, Sisneros has not rebutted the individual Defendants' showing of their entitlement to qualified immunity.  They did not commit a clearly established constitutional violation against Sisneros.  No clearly established constitutional infraction occurred as there was (i) reasonable suspicion to stop and to detain Sisneros; (ii) probable cause to arrest Sisneros; and (iii) no excessive force used by the Defendants.  Accordingly, the individual Defendants are entitled to qualified immunity as to Count I of Sisneros' Complaint.

A.     **SISNEROS HAS THE INITIAL BURDEN OF SHOWING A CONSTITUTIONAL VIOLATION.**

Because the Defendants have pled qualified immunity, Sisneros bears the initial burden of showing a constitutional violation.  See Albright v. Rodriquez, 51 F.3d at 1534 ("First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right.").  Sisneros has not met his burden to establish a constitutional violation because he has failed to offer evidence that the Defendants' actions amounted to a constitutional violation.

B.     **THERE WAS REASONABLE SUSPICION TO STOP AND TO DETAIN SISNEROS.**

"When a police-citizen encounter rises to the level of a seizure, the seizure must be supported by the requisite level of suspicion or probable cause."  Latta v. Keryte, 118 F.3d 693, 698 (10th Cir. 1997).  "[A] police officer who observes suspicious circumstances may stop an individual briefly to investigate the circumstances provoking suspicion."  Id. (citing Terry v. Ohio, 392 U.S. 1 (1968)).  Police officers may, "in recognition of their obligation to enforce the law when they reasonably suspect criminal activity, . . . effect stops and . . . pursue short, limited investigations infringing on

the individual's freedom of movement based on less than probable cause to arrest." Bierly v. Schoenfeld, 781 F.2d 838, 841 (10th Cir. 1986)(citing Terry v. Ohio). Accordingly, an officer can detain an individual if the officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. at 21. Therefore, in analyzing whether the investigative detention in this case complies with the Fourth Amendment, this Court must determine whether there was reasonable suspicion to detain Sisneros.

In this case, Duren stopped Sisneros because his vehicle matched the description of the vehicle that Wood had described to the 911 operator. See Duren Aff. ¶ 7, at 2. Wood had also indicated that the driver of the vehicle had brandished a weapon. See id. ¶ 8, at 2; Cunningham Aff. ¶ 4, at 1; McGuire Aff. ¶ 4, at 1. Based upon the information that Wood supplied, the officers had reasonable suspicion to pull Sisneros' vehicle over to investigate the allegations relayed over the dispatch.

Also, given that Wood indicated that Sisneros was armed with a weapon, the officers were justified in initiating a felony stop. See, e.g., United States v. Shareef, 100 F.3d 1491, 1502 (10th Cir. 1996)(holding that it was reasonable for officers to conduct a felony stop and noting that, "[s]ince police officers should not be required to take unnecessary risks in performing their duties, they are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a Terry] stop.'")(quoting United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993). A reasonable officer in the Defendants' position would have done the same for personal safety reasons. The Defendants therefore had reasonable suspicion to detain Sisneros, and it was reasonable for the Defendants to conduct a felony stop during this detention.

It is important to underscore that, while Sisneros' counsel in the Response asserts that

Sisneros has always denied the substance of the charges regarding the use of the gun, Sisneros does not present any facts disputing the Defendants' facts or create a genuine issue of material fact on whether he was waving a gun outside his window.  Moreover, it is not so important what Sisneros actually did; what is important is whether the officers had reasonable grounds to believe that Sisneros was driving down the road brandishing a weapon.  There is no evidence to create a dispute on that issue.  Furthermore, Sisneros' denial, without more, does not negate reasonable suspicion or probable cause.  See United States v. Sokolow, 490 U.S. 1, 10 (1989)(holding that reasonable suspicion is not determinative upon whether an individual's particular conduct is innocent or guilty); Pino v. Higgs, 75 F.3d 1461, 1469 (10th Cir. 1996)("'Constitution does not guarantee only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released.'")(quoting Baker v. McCollan, 443 U.S. 137, 14 (1979)).

## C.    THERE WAS PROBABLE CAUSE TO ARREST SISNEROS.

The Defendants also acted reasonably because there was probable cause to arrest Sisneros. The probable cause standard allows a police officer to arrest a person without a warrant if the officer has probable cause to believe that the person committed a crime.  See Tennessee v. Garner, 471 U.S. 1, 8 (1985).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Jones v. City & County of Denver, 854 F.2d 1206, 1210 (10th Cir. 1988)(citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).

"When a warrantless arrest is the subject of a 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest'

the plaintiff." Romero v. Fay, 45 F.3d at 1476 (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). Probable cause does not require a finding of guilt beyond a reasonable doubt, nor does it require proof of a prima facie case.  See St. John v. Justman, 771 F.2d 445, 448 (10th Cir. 1985).  Rather, probable cause requires a "substantial probability that a crime has been committed and that a specific individual committed the crime." Id.

In this case, the dispatcher relayed information that Wood had reported that Sisneros had been driving erratically and that Sisneros had brandished a firearm.  See 911 audiotape; Duren Aff. ¶ 4, at 2; Cunningham Aff. ¶ 4, at 1; McGuire Aff. ¶ 4, at 1.  Wood was on the scene when the three officers detained Sisneros, and he positively identified Sisneros as the person who had threatened him with a firearm.  See Duren Aff. ¶ 15, at 3.  Given these facts, there was probable cause for the officers to arrest Sisneros for a variety of offenses, such as Aggravated Assault, Assault, and Harassment.  See NMSA sections 30-3-1, 30-3-2; and 30-3A-2.

Moreover, Sisneros' mention of the dismissal of the charges after the District Attorney's Office took the case under advisement does not negate probable cause.  The Court determines probable cause for arrest in terms of the circumstances confronting the arresting officer at the time of the arrest.  Subsequent events that take place in a suspect's criminal prosecution, such as dismissal of the charges or an acquittal or a conviction, do not undermine the validity of the arrest.  See Summers v. State of Utah, 927 F.2d 1165, 1166-67 (10th Cir. 1991)("Since probable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure . . . the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution, such as dismissal of charges . . . or acquittal")(citations omitted). Hence, Sisneros' attempt to imply that reasonable suspicion and/or probable cause are lacking fails.

Sisneros does not support his argument with evidence that creates a genuine issue of material fact on these issues.

### D.     THERE WAS NO EXCESSIVE FORCE USED AGAINST SISNEROS.

Sisneros has asserted excessive force claims against all the individual Defendants in this case. Those claims, however, lack a basis in Sisneros' allegations, the evidence in the record, or the law. A review of the police officers' actions, as Sisneros testifies to them, shows that they were objectively reasonable under the circumstances.

The record could reasonably be read as revealing that Sisneros has testified in contradiction to the three police officers. He contends that he was directed to walk backwards toward them, more than one officer grabbed him, he told them he had shoulder and back problems, and he was still forcibly thrown to the ground, handcuffed, and pulled upright. On the other hand, the two stories could be reconciled to eliminate any factual dispute as to these three police officers, leaving the possibility it was some unknown police officers that did these things to Sisneros. While that brings an oddness and improbability to this case, it does emphasize that Sisneros' case lacks evidence linking the individuals to the alleged constitutional violations.

Personal participation is an essential element of proof for purposes of establishing a constitutional violation. See Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996)("[P]ersonal participation is an essential allegation in a § 1983 claim."). If the Court is to hold police officers personally liable for violating a citizen's constitutional rights, the Court needs the evidence to provide a sound basis for concluding that the officer is the one who violated the Constitution. See Williams v. State of Kansas, 2003 WL 22255965, slip opinion at *1 (10th Cir. Oct. 2, 2003)("Moreover, Mr. Williams fails to allege facts establishing Simmons and Cummings personally caused a constitutional

violation. 'Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.'")(quoting <u>Foote v. Spiegel</u>, 118 F.3d 1416, 1423 (10th Cir. 1997)); <u>Scull v. New Mexico</u>, 236 F.3d 588, 599 (10th Cir. 2000)("As a preliminary matter, we note that none of the BCDC Appellees was involved in the delay.  Consequently, Mr. Reed has no § 1983 claims against the BCDC Appellees, regardless of the lawfulness of the detention.")(citation omitted); <u>Bennett v. Passic</u>, 545 F.2d 1260, 1262-63 (10th Cir. 1976)("Personal participation is an essential allegation in a § 1983 claim.").  For purposes of establishing liability against the three officers, Sisneros must show that they personally participated in an alleged constitutional infraction.

In responding to the Defendants' motion, Sisneros presents no evidence that any of these Defendants used excessive force, battered or assaulted him.  Sisneros concedes that he does not know who took him to the ground and handcuffed him.  There is thus no direct evidence that McGuire or Cunningham touched Sisneros.  <u>See</u> McGuire Aff. ¶ 16, at 2.

There is also no direct evidence that McGuire or Cunningham used any physical force against Sisneros.  <u>See</u> McGuire Aff. ¶ 16, at 2.  McGuire and Cunningham do not state in their respective affidavits that they handcuffed Sisneros, and both say that Sisneros "was handcuffed."  <u>See</u> McGuire Aff. ¶ 9, at 2; Cunningham Aff. ¶ 13, at 2.  Duren's affidavit states: "I handcuffed him."  <u>See</u> Duren Aff. ¶ 13, at 3.  Thus, the Defendants' evidence indicates Duren acted alone in handcuffing Sisneros. McGuire further states that he did not use any physical force against Sisneros, while Cunningham is silent on this point.  <u>See</u> McGuire Aff. ¶ 16, at 2.  Sisneros does not present any evidence disputing these facts.

Sisneros cannot prove what, if anything, any of the officers did to him.  <u>See</u> Sisneros Depo. at 97; Transcript of Hearing, Excerpts at 5, line 20 to line 12.  This is particularly apparent in

Sisneros' deposition testimony:

> Q.     What did Officer Duren do to you?
>
> A.     See, I don't know.
>
> Q.     What did Officer Cunningham do to you?
>
> A.     I don't know.
>
> Q.     And what did Officer McGuire do to you?
>
> A.     I don't know.

Sisneros Depo. at 97, lines 16 - 22.  Given the state of the record, Sisneros' excessive force claims against these Defendants cannot stand.

Duren handcuffed Sisneros.  But even though Duren states that he handcuffed Sisneros, Sisneros does not identify him as the person who allegedly threw Sisneros to the ground and handcuffed him.  Sisneros has not shown that any of the Defendants committed a constitutional infraction against him.

Duren handcuffed Sisneros after Sisneros finally complied with McGuire's orders to exit the vehicle.  See Duren Aff. ¶ 13, at 3.  Duren asserts that Sisneros was standing upright when Duren handcuffed him.  See id. ¶ 14, at 3.  Sisneros alleges that he was thrown to the ground and then two unidentified officers handcuffed him.  See Sisneros Depo. at 48-51.  Sisneros alleges that this handcuffing process occurred "real fast."  Id. at 50.

There are different accounts as to how Sisneros was handcuffed.  These factual disputes, however, do not preclude the Court from granting summary judgment in favor of the Defendants on Sisneros' Fourth Amendment claim.  For example, there were factual disputes in Gross v. Pirtle; however, the Tenth Circuit stated that it could still determine whether the defendant's conduct, as

the plaintiff described, violated clearly established law.   See Gross v. Pirtle, 245 F.3d 1151, 1158 (10th Cir. 2001).  In Gross v. Pirtle, the plaintiff alleged that the defendant had kicked him "very hard" in the foot during the course of his arrest even though he did not resist arrest.  Despite the factual disputes in the case, the Tenth Circuit granted the defendant officer qualified immunity, reasoning that, "[i]n making an arrest, officers may use some degree of physical coercion or threat thereof to effect it.  For example, in order to position an arrestee for a pat down search for weapons, officers frequently use a reasonable amount of force."  Gross v. Pirtle, 245 F.3d at 1158 (internal citations and quotations omitted).

Sisneros urges the Court to overlook the lack of evidence showing any personal participation on the part of the Defendants.  He contends that, given his complaint, the police officers' behavior at the time of his arrest, his age, and the totality of the circumstances, a jury could find the police officers' actions were volatile and abusive.  The Court disagrees.

When the Court accepts as true Sisneros' allegations, they do not establish that the individual Defendants used excessive force.  In determining whether Duren or the other individual Defendants used excessive force against Sisneros, this Court must decide if their actions were "objectively reasonable" under the circumstances. Graham v. Connor, 490 U.S 386, 397 (1989).  When analyzing the reasonableness of force of a seizure, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Id. at 396 (internal quotation marks and citations omitted).  The court must judge the "reasonableness" of a particular use of force from the perspective of a reasonable officer at the scene, rather than with the benefit of 20/20 vision of hindsight.  See id. at 396-97.

Likewise, the reasonableness analysis should take into consideration "the fact that police

officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." Id. at 396. See Latta v. Keryte, 118 F.3d at 701(same, quoting Graham v. Connor).

The recent decision by the Supreme Court of the United States in Saucier v. Katz, 533 U.S. 194 (2001), clarified the excessive force inquiry in the context of a qualified immunity analysis. In Saucier v. Katz, the Supreme Court found that, with regard to excessive force claims, there still must be a determination whether a reasonable officer could have believed that his conduct was lawful in light of clearly established law. See id. at 195-95. The clearly established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 194. This Court must therefore examine whether the facts, as alleged by Sisneros, show Duren committed a clearly established constitutional violation when he handcuffed Sisneros.

As discussed above, there was probable cause for Sisneros's arrest. The Supreme Court noted in Saucier v. Katz: "In Graham we noted that our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 208 (quoting Graham v. Connor, 490 U.S. at 396). The Tenth Circuit has recognized and followed this premise. See Gross v. Pirtle, 245 F.3d at 1158 ("In reviewing excessive force claims, we acknowledge that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'")(quoting Graham v. Connor, 490 U.S. at 396).

Accepting Sisneros' allegations as true, that he was taken down to the ground and handcuffed,

this allegation does not amount to excessive force.  See, e.g., Saucier v. Katz, 533 U.S. at 211-12 (Ginsburg, J., concurring)(finding that the alleged "gratuitously violent shove" of plaintiff, even if accepted as true, did not amount to a clearly established constitutional violation); McGregor v. City of Olathe, 158 F. Supp. 1225, 1236-37 (D. Kan. 2001)(holding that there was no evidence in the record that the force that the defendant officer used was excessive when the officer tackled the plaintiff from behind after she attempted to flee).  Moreover, a reasonable officer who had information that Sisneros was armed and was threatening persons with a firearm could have believed that it was necessary to take Sisneros down to the ground and handcuff him to disarm him and ensure everyone's safety.  See, e.g., Saucier v. Katz, 533 U.S. at 208-209 (holding that a reasonable officer in petitioner's position could have believed that hurrying respondent away was appropriate).  There was justification for his being grabbed, thrown to the ground, and then forcibly pulled to his feet. Thus, even if the Court accepts as true Sisneros' version of the event, and were to assume that his account is adequate to implicate all three individual Defendants, he has not met his burden of establishing that the actions of the individual Defendants create a genuine issue of material fact as to a constitutional or statutory violation precluding summary judgment.

Sisneros has not met his burden in showing personal involvement by any of the named Defendants. Therefore, the individual Defendants are entitled to qualified immunity against Sisneros' excessive force claim as there is no evidence that any of the Defendants participated in the alleged constitutional infraction.  He also has not met his burden to show that the individual Defendants used excessive force against him.  The facts, as alleged by Sisneros, do not establish that the individual Defendants used excessive force against him. The Court finds that Sisneros has not met his burden of showing that the qualified immunity defense is not available.  The individual Defendants are thus

entitled to judgment as a matter of law, and the Court will dismiss Sisners' excessive force claim against the individual Defendants.

## II.   THE DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE NEW MEXICO TORT CLAIMS ACT AND ARE THUS ENTITLED TO A DISMISSAL OF COUNT II OF SISNEROS' COMPLAINT.

The specific provisions of the New Mexico Tort Claims Act ("NMTCA") limit potential tort liability of a governmental entity and its employees. See Pemberton v. Colorado, 105 N.M. 476, 477, 734 P.2d 254, 255 (Ct. App. 1987). The NMTCA provides governmental entities and public employees with immunity from tort suits unless there is a specific waiver of that immunity set forth under the Act. See Weinstein v. City of Santa Fe, 121 N.M. 646, 649, 916 P.2d 1313, 1315 (1996). The court must strictly construe any provision purporting to waive governmental immunity. See Armijo v. Department of Health & Environment, 108 N.M. 616, 618, 755 P.2d 1333, 1335 (Ct. App. 1989). In this case, the Defendants are immune from all of Sisneros' claims asserted under the NMTCA.

The waiver provisions of the NMTCA require that the law enforcement officer "caus[e]" the alleged tort. Because it is law enforcement officer's actions that effect the waiver of immunity, the plaintiff asserting that the Legislature has waived that immunity must create a genuine issue of material fact as to the underlying tort to show that the officer(s) waived immunity. Thus, if Sisneros' allegations, taken as true, do not amount to assault or battery, the officer has not waived immunity. Here, the officers did not commit assault or battery and, therefore, are immune from the suit.

Section 41-4-12 of the NMTCA sets forth the specific torts for which the Legislature has waived immunity for law enforcement officers. This section waives immunity for various torts, generally intentional torts, "caused by law enforcement officers while acting within the scope of their

duties." Bober v. New Mexico State Fair, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991).  Sisneros contends that state tort assault and battery claims are actionable against the Defendants.

To state a claim for assault, Sisneros must allege the following elements: (i) the Defendants tried to touch or apply force to him; (ii) the Defendants intended to touch or apply force to him; (iii) and the Defendants acted in a rude, insolent or angry manner.  See UJI 14-303 NMRA 2003.  To state a claim for battery, Sisneros must allege the following elements: (i) the Defendants intentionally touched or applied force to him; (ii) the Defendants acted in a rude, insolent or angry manner; and (iii) the Defendants' conduct was unlawful.  See UJI 14-320 NMRA 2003.  In this case, Sisneros does not have viable assault or battery claims against McGuire and Cunningham.

With regard to his state law claims against the Defendants, Sisneros testifies that two officers grabbed him.  See Sisneros Depo. at 49-50.  Sisneros does not present any evidence identifying who allegedly "grabbed" him.  There is no evidence that McGuire and Cunningham touched him, and the evidence is that McGuire and Cunningham did not touch him.  McGuire denies physical contact with Sisneros in his affidavit.  Duren states that he handcuffed Sisneros.  The other two policemen do not say who did the handcuffing.  Cunningham and McGuire do not specify that only one police officer did the handcuffing.

Sisneros contends that these are questions of fact which preclude granting summary judgment for Cunningham and McGuire under the state tort claim.  As to Duren, Sisneros contends that his admission that he handcuffed Sisneros, in conjunction with Sisneros' testimony of how he was grabbed from behind, provides the required evidence of misconduct to preclude summary judgment. The Court disagrees.  Sisneros admits that he has no evidence showing that Duren or any of the other individual Defendants committed any misconduct.

21

Sisneros suggests that the Court should pick and choose from each side's facts to create a story that neither side advances. On a motion for summary judgment, however, the Court looks at the arguments of the parties combined with the facts in the record to determine whether a genuine issue of material fact exists, requiring that the case be submitted to the fact-finder. <u>See</u> Fed. R. Civ. P. 56(c). It is not the Court's duty to create a genuine issue of material fact; it is the non-movant's duty to point to such an issue in opposing a motion for summary judgment.

Notwithstanding the gaps in necessary evidence for Sisneros' case, Sisneros' assertions, even taken as true, do not amount to assault or battery. The facts that Sisneros alleges and does not dispute show that the officers' actions were lawful and were done in good faith. The intense circumstances involved would have justified the individual Defendants in "grabbing" Sisneros and taking him into custody.

The Defendants are thus entitled to summary judgment against Sisneros' state law claims under the New Mexico Tort Claims Act. The New Mexico state courts routinely grant summary judgment for police officers when the facts show that they acted reasonably under the circumstances. <u>See</u>, <u>e.g.</u>, <u>Romero v. Sanchez</u>, 119 N.M. 690, 693, 895 P.2d 212, 215 (1995)(holding that district court properly granted summary judgment on state law claims of trespass, assault, false imprisonment, unlawful detention, burglary, and larceny because defendant police officer was lawfully conducting an investigation on the plaintiff's property); <u>Mead v. O'Connor</u>, 66 N.M. 170, 173, 344 P.2d 478, 479-80 (1959)(affirmed entry of judgment for plaintiff but noted, "[o]fficers, within reasonable limits, are the judges of the force necessary to enable them to make arrests or to preserve the peace. . . . When acting in good faith, the courts will afford them the utmost protection . . . ."); <u>Perea v. Stout</u>, 94 N.M. 595, 600, 613 P.2d 1034, 1039 (Ct. App. 1980)(affirming trial court judgment entered in

favor of defendants and recognizing that probable cause, good faith, and reasonable belief in the lawfulness of police action are defenses to false imprisonment and false arrest).

The Court will dismiss all of Sisneros' claims asserted under the NMTCA against the individual Defendants.  Sisnero has not shown that the Legislature has waived immunity under the Act for these allegations.

## III.   SISNEROS HAS FAILED TO ALLEGE A VALID CLAIM AGAINST THE DEFENDANT CITY OF ALBUQUERQUE.

Sisneros alleges a theory of respondent superior against the City of Albuquerque under the NMTCA.  This argument assumes that the Court does not dismiss Sisneros' claims for excessive force, assault, and battery.  As discussed above, however, the individual Defendants did not violate Sisneros' constitutional rights or commit any of the torts listed under § 41-4-12 of the NMTCA. Sisneros' respondeat superior claim against the City of Albuquerque also fails, and the Court will not allow it to continue.  See, e.g., McDermitt v. Corrections Corp. of Am., 112 N.M. 247, 248, 814 P.2d 115, 116 (Ct. App. 1991).

## IV.   THE COURT WILL DISMISS UNIDENTIFIED DEFENDANTS LISTED AS JOHN DOES I-III.

In his complaint, Sisneros named three unidentified defendants, listing them as John Does I-III.  While the Federal Rules of Civil Procedure do not address this mechanism of pleading against unidentified parties through a legal fiction such as John Doe, the practice is generally accepted by federal district courts so that parties may proceed against defendants unidentified at the time a complaint is filed but whose identities may later be uncovered through discovery. See , e.g., Kemper Ins. Cos., Inc. v. Federal Express Corp., 115 F. Supp. 2d 116, 124-25 (D. Mass. 2000).  "However, the Doe fiction may only be used until such time as the actual identities can be learned.  Fictitious

parties must eventually be dismissed, if discovery yields no identities." Id. at 125 (internal quotation marks and citation omitted).

As noted above, discovery in this matter concluded more than four months ago.  Sisneros did not, at any time during or since discovery, move to amend the complaint providing actual names to replace the fictitious John Does I-III.  At the hearing, Sisneros confirmed that he has not identified who these John Does I-III might be.  See Transcript of Hearing, Excerpts at 8, l. 7-8.  Accordingly, the Court will dismiss all three Doe defendants from this action. See Atlantic Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D. Penn. 1997)("Rule 21 of the Federal Rules of Civil Procedure allows this Court to drop parties on 'its own initiative at any stage of the action and on such terms as are just.' Fed. R. Civ. P. 21.  We exercise our discretion under this rule to dismiss the two Doe defendants from this action because Plaintiffs have not ascertained their true identities."); Clark v. McMillin, 932 F. Supp. 789, 794 (S.D. Miss. 1996)("This case was filed nine months ago . . . and . . . discovery has commenced and been concluded.  Yet to date – and certainly not within 120 days of filing her complaint – plaintiff has not moved to amend her complaint to identify and name the John Doe defendant.  Accordingly, dismissal of the John Doe defendant is in order.").

Based upon the parties' arguments, points and authorities contained in the Defendants' Motion for Summary Judgment and all parties' briefing and the oral argument held on October 15, 2003, the Court will enter an order granting the Defendants' Motion for Summary Judgment.[4]

**IT IS ORDERED** the Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint is granted and the Plaintiff's complaint is dismissed with prejudice against all

---

[4] The Defendants request attorney's fees and costs, but provide no basis for such an award. Under the American rule, fees and costs are not shifted unless some rule or statute creates an exception.  The Defendants point to no exception, and none appears available.

Defendants.  The Court denies the Defendants' request for attorney's fees.

_____
UNITED STATES DISTRICT JUDGE

David Greer
Albuquerque, New Mexico

      *Attorney for the Plaintiff*

Robert M. White
  City Attorney
Stephanie M. Griffin
  Assistant City Attorney
City of Albuquerque
Albuquerque, New Mexico

      *Attorneys for the Defendants*